The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is an unemployed 51-year-old married female. She only completed the tenth grade, but subsequently obtained her GED or so called high school equivalency certificate at Wayne County Community College as well as her Cosmetology license at Mitchell's Hairstyling. "Because she is not willing to make her brain die" plaintiff's husband purchased her a computer and she is now taking a computer class. Her work experience has included working at a sewing factory as a sewing machine operator and at a McDonalds taking counter and drive through orders as well as opening and closing the premises. Since becoming incapacitated by her cognitive affective disorder plaintiff has attempted to sell Amway as well as other similar pyramid sales schemes, but has not been successful.
2. During the period from November 10, 1987 until she was forced to resign from its employ because of the disabling cognitive affective disorder giving rise hereto plaintiff was employed by defendant Standard Products, which was involved in the business of manufacturing molded rubber products for the automotive industry.
3. After initially working as mold operator in the sailplate area plaintiff was transferred to the glassrun area where she was responsible for cleaning and inspecting rear door sections requiring her to initially wipe down each section with mineral spirits and then use acetone to clean any remaining glue or paint. Because the painters were not very neat resulting in paint flowing out onto the two (outside and inside) show surfaces of each section plaintiff had to practically clean every one with acetone before rewiping them down again with mineral spirits.
The two solvents, mineral spirits and acetone, were in separate containers with plungers plaintiff depressed wetting down the towels or rags used to clean the molded rubber parts.
4. Ultimately during the last several months that she cleaned and inspected parts in the glassroom area prior to a transfer to the Filleting Department in January 1991 defendant employer combined the cleaning and inspecting job with the preceding one on the same production line painting and foaming parts thereby additionally exposing her to polyurethane paint as well as to the vanishing oil used in the placement of foam strips.
5. As part of her cleaning and inspecting job plaintiff was also required to keep an hourly count of the number of parts cleaned and inspected as well as to fill out a production sheet at the end of the work day indicating the total number of parts cleaned and inspected.
6. Plaintiff did not wear any type of respiratory protection while cleaning and inspecting parts and two solvents used, mineral spirits and acetone, had strong odors, which at times were overpowering not only resulting in her becoming nauseous, but employees complaining to management because the premises overhead fans did not provide adequate ventilation. In response to those same complaints defendant employer hired an engineering firm, which installed a vacuum tube system at each of the cleaning and inspecting tables designed to remove the resulting fumes, but did not result in any noticeable difference in them.
7. The involved claim is one for toxic encephalopathy or brain injury and the resulting residual cognitive affective disorder plaintiff suffers due to her exposure to toxic chemicals, including, but not limited to the solvents, mineral spirits and acetone as well as polyurethane paint while working at defendant employer's automotive molded rubber manufacturing plant, which (disease or condition) is characteristic of and peculiar to the same trade, occupation or employment, wherein as compared to members of the general public and other employments, there is an increased risk of the same disease or condition.
8. Due to her exposure to toxic chemicals, including, but not limited to, the solvents, mineral spirits and acetone, while working at defendant employer's automotive molded rubber manufacturing plant plaintiff has suffered a toxic encephalopathy or brain injury and a resulting residual disabling cognitive affective disorder manifested by memory loss, blackout spells, her not feeling well and emotional lability with associated personality change.
9. Plaintiff's symptoms initially occurred while she was cleaning and inspecting parts in the glassrun area. Once the same symptoms began they progressively worsened even after plaintiff was transferred to the filleting department in January 1991 where she was no longer required to use any type of chemicals.
10. Ultimately plaintiff was forced to resign from defendant's employ on April 5, 1991 because of her fear that she would have another of her continuing blackout spells and would fall off the elevated platform on which she worked in the filleting department.
Because of her memory lapses and resulting inability to maintain either her hourly account or prepare the daily production log plaintiff had to rely on a coworker to assist her in doing so. As a result of her cognitive affective disorder plaintiff did not feel well resulting in her losing more than 40 pounds, but has been able to regain that weight since being forced to resigned from defendant employ in April 1991.
11. Plaintiff is currently being treated for her disabling cognitive affective disorder by Dr. Donald E. Schmechel at Duke University Medical Center's Memory Disorders Clinic and has not yet reached maximum medical improvement from the same condition; but rather, there are a number of diagnostic and treatment issues that remain unanswered; however, in the interim plaintiff remains unable to return to her regular job for defendant-employer or any other type of work because her cognitive affective disorder has resulted in the inability to operate independently in the work place.
12. Plaintiff, however, is not physically disabled in the traditional sense by the involved injury as evidenced by the fact that she has attempted to stay as physically active as she can (as well as mentally active) and has been able to clean out the trailers of the trailer park jointly owned with her husband after the tenants leave; but rather, it is because of her inability to function mentally and emotionally in the work place that currently prevents plaintiff from being able to return to any type of gainful employment at this time.
13. There is no evidence that plaintiff was advised by competent medical authority of the nature and work related quality of the involved occupational disease more than two years prior to the time she filed the instant claim. The earliest that either the stipulated medical records or medical testimony show that any of the multiple physicians involved were even considering plaintiff's problem to have arisen from a toxic chemical exposure occurred in 1993 when plaintiff's counsel broached the subject with Dr. Maier, who initially referred plaintiff to Dr. Schmechel at Duke University's Medical Centers Memory Clinic in March 1995 and it was Dr. Schmechel who initially diagnosed plaintiff's encephalopathy due to toxic chemical exposure. Defendant employer, however, was aware that plaintiff was having significant problems with the same condition while she still working there.
* * * * * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Due in significant part to her exposure to toxic chemicals, including the solvents, mineral spirits and acetone, while working at defendant employer's automotive molded rubber manufacturing plant plaintiff has suffered a toxic encephalopathy or brain injury and a resulting residual disabling cognitive affective disorder, which (disease or condition) is due to causes and conditions that are characteristic of and peculiar to the same employment, but excluding all ordinary diseases of life to which the public is equally exposed outside of employment. Plaintiff thus suffers a compensable occupational disease. G.S. 97-53(13).
2. Plaintiff has not yet reached maximum medical improvement and/or the end of the healing period from and following her occupational disease; but rather, remains in need of further diagnostic testing and treatment.
3. As a result of the occupational disease giving rise hereto plaintiff has remained totally disabled since April 5, 1991 entitling her to compensation at a rate of $187.60 per week from April 5, 1991 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains so disabled, subject to a change of condition, medical or employment.
4. To the extent the same are reasonably designed to attempt to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants are obligated to pay all reasonable and necessary medical expense incurred by plaintiff as a result of the occupational disease giving rise hereto.
* * * * * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff, on account of her continuing total disability, compensation at a rate of $187.60 per week from April 5, 1991 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains totally disabled, subject to a change of condition, medical or employment. Such compensation as has accrued hereunder shall be paid in a lump sum, without computation, subject to a reasonable attorney fee hereinafter approved.
2. At this time a reasonable attorney fee in the amount of 25 percent of the accrued compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same Award and forwarded directly thereto. For the balance of this fee defendant carrier shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the occupational disease giving rise hereto when bills for the same are submitted in accordance with the Industrial Commission Rules.
4. Defendants shall bear the costs, including as part thereof expert witness fees in the amount $350.00 Dr. Donald E. Schmechel and $325.00 to Dr. Douglas H. Adams, each of whom appeared by way of deposition and gave expert medical testimony.
FOR THE FULL COMMISSION
 S/ ___________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ___________________________ J. RANDOLPH WARD COMMISSIONER
S/ ___________________________ LAURA K. MAVRETIC COMMISSIONER
CMV/cnp/mj 4/24/96